We're ready to proceed with the first case, which is Cortez v. Forster & Garbus. And we'll try and give you a little time to start since we're in this telephone format. Mr. Arleo? Yes. May it please the Court. My name is Robert Arleo. I am counsel for these fellows, Forster & Garbus, whom I referred to as Forster & Garbus during this oral argument. This appeal arises under the infamous Avila decision, wherein this appeals court held that a debt collector has two choices if the debt is increasing due to interest costs and or other fees. Either advise that the debt is increasing so that the amount paid after the date of the letter may be greater than the balance in the letter, or advise that the debt collector will accept a certain amount if paid by a specific date. I'll refer to these as Avila choice one or two. The district court incorrectly granted summary judgment to the appellee because the letter did not advise that the amount was increasing. However, the district court ignored that the letter complied with choice two. The letter set forth a clear and unequivocal reversion amounts of payment set forth by specific dates. The letter said the office has been authorized to advise that a settlement can be arranged. You are being offered a substantial discount off the current balance. You may choose one of the three payments. Please note we're not obligated to repeat this offer. This was clear and unequivocal in any argument to the contrary of basis. The district court improperly found that the letter failed to advise that the debt would increase if the lesser amounts were not timely paid. However, no such requirement is found in Avila. This appeals court merely suggested that a debt collector could simplify the consumer's understanding by advising that the amount will increase if payment was not received by a deadline date. Mr. Arleo, this is Judge Lynch. What does the letter say happens if the debtor opts, let's say, for option B and sends the first installment a week after the date that the letter says you'll expect the payment? The letter doesn't state anything concerning that if he sends it a week after. Isn't that presenting exactly the kind of problem that Avila was concerned about? The letter does not say you can settle this for X amount if and only if you pay by date Z. It says you can take this option, and if so, we'll expect this by a particular date, but it doesn't make that an unequivocal deadline. It doesn't say whether if the payment is not made by that deadline, either it doesn't count at all or it counts against an escalated amount that would have run by that date because the payment wasn't on time or it will be good enough and it will be accepted in full satisfaction of the debt. Nothing of that sort is specified, is it? Your Honor, I would say to that that issue could apply to any debt collection letter. You can impose a hypothetical to any collection letter that supposes it didn't say X or Y, but that would bring us back to the issue concerning the fact that there were 12 collection letters sent previously. Before we get to the previous letters, I'm still focused on this one because I think this sounds to me like exactly the Avila problem, which is one thing that can be said is here's the amount, but note that it's increasing and you won't necessarily settle the debt if you send a check for that amount. Another thing you can do is say here's the amount that you have to pay, and if you pay that amount by this date, then you're done. But this letter doesn't necessarily, or maybe you can explain to me how it does, tell the recipient what would actually settle the thing completely. Your Honor, I think in that regard, you're respectfully expanding what Avila says. Avila gives you two choices. Either say it's going to increase and therefore the balance may be greater, or date that the amount. If you pay this amount by this date, we will accept that amount. Can I ask a question about Avila's holding? I think I'm quoting. We hold that the FDCPA requires debt collectors, when they notify customers of their account balance, to disclose that the balance may increase due to interest and fees. If I take it as part of your argument that this is not really a disclosure letter of the account balance. I mean, does the letter, in fact, give the account balance as a settlement offer? I actually don't have an equivalent at this point, Mrs. Stewart. We have a bounce, Mr. Policeman. Can I ask a question about Avila's holding? I think I'm quoting. If I take it, it's part of your argument that this is not really a disclosure letter of the account balance. I mean, does the letter, in fact, give the account balance or is that on the job? I'm sorry, does someone have a tape recorder on? We're having some sort of feedback issue. Yes, I think we may have to pause and start again. So everyone should stop speaking. Okay, it seems to be, I'll ask the clerk of court, is whatever issue we were having resolved? Yes, Judge, I noticed some sound coming from one of the lines, so I mute that line, which is not a person that's arguing for this case. Okay, all right, I think we can pick up where we left off. I think the pending question was, does this letter state the account balance? And the answer is it does, right, in the upper right-hand corner? Yes. So if it states the account balance, don't you need to note that that account balance may be subject to increase over time? Well, as I read Avila and as agreed to by Judge Glasser, Avila is one or two. And in Kraus, Judge Glasser held that to put an advisement that the amount could increase in addition to settlement offers would be confusing. So the Kraus decision is set forth, I believe, on page 17 of the appellate brief, 16 to 17. So, no, in the instance where you're putting a date certain, you do not need to include the advisement that the debt is increasing. And that was confirmed by Kraus. May I continue with a still pending question? Well, could you address then, Judge Lynch's, the question that Judge Lynch began with, what about the circumstance where the payment is not received on time? The settlement, you know, the settlement payment is proffered, but it's proffered late. What would happen in that context? Okay, so that goes to the argument that Avila is fact-based. Avila was, this court was concerned with the fact that the consumer could pay the debt and then still be charged the interest and fees that occurred. Here, this is similar to an E-5 violation, which then you can't make unintended action. Well, if a lawyer sends a letter and the consumer says, well, you're threatening unintended legal action, that's a fact question. Here, Avila is fact-specific. Factually, and the evidence was put in the district court, that if the consumer paid any of these amounts at any time, the debt would have been considered satisfied in full and the satisfaction of judgment would have been filed with the court. Well, how does the consumer know that if it's not stated in the letter? You say if the consumer paid the amount at any time that you'd mark it paid? Correct. So when it says we expect the amount by X date, that's not, in fact, a deadline. Well, yes, because the letter doesn't say you have an absolute deadline. And I think there's a whole line of settlement offer cases, some of which came out from this court, where if you leave it open-ended and you don't say that this will absolutely expire, then it's not false and deceptive. Here, this letter says, well, we'll expect it by there. But clearly, it's not an absolute mandate. The letter doesn't say we'll expect it. And if you don't pay it, it's going to be withdrawn and it's impossible to make it after that. So here, this is very soft language in the letter, and it doesn't render it to the least sophisticated consumer, who is charged with reading the letter as a whole and is not adult and who can connect the dots in the letter. So here, I don't think that that's right. So the dots are to be connected in such a way that the least sophisticated consumer would know that if he or she missed the deadline by a week or a month or three months, it would still be marked totally paid if the settlement amount was paid sooner or later? So if that's a fact, then that relieves the appeal problem. Wait, wait, wait, wait. I asked you, that's what the least sophisticated consumer is supposed to know from reading this letter? Well, would it be – and with all respect, Your Honor. I'm sorry. I asked a question, and I want an answer, not a question. Right. I'm trying to answer. So would they be expected to think that? Well, it says, please note, we're not obligated to review this or to repeat this offer. I believe the least sophisticated consumer could realize here that this is a debtor looking to get a severely reduced amount. The amount owed is $13,000. They have a one payment of $5,000, lesser payments of $9,000. Clearly, they're on notice that this credit is willing to deal. So I think the least sophisticated consumer would conclude, hey, I don't have to do it by that deadline. I can get a little extra time to make this payment. And would know that the amount of the debt is not going to increase if the payment is late. Well, that's the second – that goes to the argument where the Second Circuit said you can increase their understanding. But the Second Circuit didn't mandate that language. So I believe we're on – your Honor is on that issue. I think what I'm doing is asking a question about what the least sophisticated consumer would understand from this letter. And I asked, and the least sophisticated consumer would know that if the – if he or she returned a payment that was the same amount, but approximate in date and missed the deadline, that that would work and would not lead to an increase in the amount of the debt owed. And would know – and apparently, if they returned a slightly lesser amount on the right date, would that work? Well, your Honor, you're posing a whole bunch of different hypotheticals. Well, the question is, what does a reasonable consumer understand from this letter? And would there be some confusion about whether the amount of the debt would increase depending on how long it takes the debtor to pay? That's the Avila issue. And you're saying that because there is a settlement offer with a deadline that's not quite a deadline, that resolves that problem because the consumer would know what would happen if he or she missed the deadline. And I'm wondering why you would think that the consumer would know that based on the wording of this letter. Well, because, again, I'll go to the fact that it's not a set deadline to make the payment. It's just an expectation. It's soft language. And the factual situation – correct me if I'm misremembering the case – but the factual situation in Avila was the concern about a consumer who would pay the debt, stated in the letter, believing that that would be it. But then fees and penalties would and could be – could and would be assessed after the payment. Correct. And that's not the case here. That's not the case here because you're telling us now that that was the intent of the debt collector. No, I'm saying that here – and my position would be if you factually – if it's factually impossible to create the harm that Avila would intend to present, why would there be an FDCPA violation? I'm not sure I understand what you mean by factually impossible. If the debtor would not know whether the payment, if it's late, will lead to an increase in payments. So you're saying the harm only occurs if, in fact, the creditor would add fees if the payment is late, which, of course, the creditor would be perfectly legally entitled to do, right? Correct. May I segue into what I think would resolve this? Because I think it's an excellent question. The prior letters indicate – there were 12 letters showing here that you can settle, and there were other deadlines in those letters, and that consumer didn't make those payments. And they came back with more deadlines. So the consumer who knew, hey, they've given me these deadlines before, I didn't make the payments, so, you know, obviously I can be late on these, and they'll accept it. They're willing to deal. So I think the argument that the consumer should be charged with reading collection letters in a group would answer your question, Mark. Well, first of all, didn't the amounts actually increase with each letter? Because, of course, the debt increases with each failure by the debtor to accept the offer. Correct. But each of the 12 letters set forth either expressed settlement offers or told the debtor you can satisfy this in full for less. So the fact that the amounts increased, that's factual because it was a judgment. But the fact that the letters here, the group, and this one alone, put the consumer on notice, listen, this creditor is willing to take less money from me. They've told me this before. They said we're not responsible to review, and we expect it by this date. There was at least one letter actually the same as this. So here, this least sophisticated consumer, and I'm not arguing that the facts of this appellee should be applied to least sophisticated consumer. I'm arguing that the least sophisticated consumer in this circumstances should be analyzed as a least sophisticated consumer who got the 12 prior letters. And retained them and would look back at them through his or her files and see what the sequence was and would know that the debt amount is actually increasing each time and the settlement offers increase each time, but the creditor is still willing to deal. We're assuming that the least sophisticated consumer retains a file of correspondence. Well, you wouldn't even have to retain the file. If it was one prior letter, maybe. But there's 12 prior letters. You don't even have to keep them. This is a judgment. It's a credit card. He knows what it's for. He's got the five letters. You don't have to review them. He reads them. Oh, here's another one. They keep mailing me letters. They keep mailing letters. They want to settle. They say if you don't pay, we're not obligated to renew, and then they send me another one that they're going to renew it. So the least sophisticated consumer under this factual scenario would know that he could be late in the payment, and they would accept it. We'll hear from Mr. Sanders. You've reserved three minutes rebuttal. Thank you, Your Honor. Thank you, Your Honor. Craig Sanders for the appellee, Christian Cortez. This is just a rather unremarkable case of the application of a villa to this fact pattern. The letter is devoid of any Miller Safe Harbor language indicating that interest is continuing to accrue and fails to make a clear and unequivocal settlement offer that the payment by specific terms would satisfy the debt in full and that there would be nothing left over, and that was the language of a villa. The villa clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date, and the language in this letter does not anywhere state that. How do we know that for sure? A villa also says that you don't have to use any specific language, and this language says you're being offered a substantial discount. You may choose which of the three payment options, one payment of $5,000 plus, which we shall expect by February 24th. If that amount had actually been paid by February 24th or even February 26th and accepted by the creditor, cashed and put into his bank account, would any New York court then allow additional amounts to be assessed, you think? Quite possibly. That is the concern that was being expressed by this court in its decision in a villa, and it's an issue that's arisen more often than it should have. These letters have evolved to be far more specific about just that issue. What happens if you make one payment and miss a payment? Now they say that that will apply towards the balance. They also include language that indicates that that would be a full satisfaction. When there's a judgment, oftentimes they now indicate that a satisfaction of judgment will be filed. For that express purpose, this is a consumer protection statute. The consumer that's being represented by that statute is the least sophisticated consumer, and not somebody represented by counsel who would necessarily even know to ask these questions. Well, but is there any real doubt, at least with respect to option A, that if that amount is paid by the date that is set forth in the letter, that that's the end of the debtor's obligation? I would say the debtor would have a very strong argument to that effect, but the letter itself is silent as to the full satisfaction component. But the letter does say you can get off cheap. You can get a discount, and the way you do that is by, at least in the simplest example, you pay this amount by that date, or you pay this amount, period, and we expect it by that date. If you make that deadline, putting aside what happens if you miss the deadline, I'm having a little trouble understanding why it would not be clear to the consumer that that's the end of it. Well, as I said, Your Honor, it would certainly be a very good argument that could be rendered, but the absence of any language that indicates that it is, in fact, a full satisfaction, that you're now finished, you've made your payment, and you're done, and this creditor won't chase you for any accruing interest or balances since the mailing of this letter, that language is absent and should be here. And how do we know that? The problem is I understand in Avila if it's just this is how much you owe, but in fact that's not true really because that may be the amount you owe as of the moment that the letter is sent, but even by the time it's received, it's grown by pennies, and by the time somebody pays that amount, it may grow even more. So that's one situation, but what the safe harbor in Avila was, was if you say we'll take this amount, that's a different scenario. And here, at least in the simplest of the options, and the others may get more complicated, and maybe there's some complications about what happens if you miss the deadline, but I would have read this, and not applying any particular legal knowledge, I just read it as English saying, oh, they're saying I can pay this much, and that's a settlement. Now, whether or not, whatever a court might do, or whatever the legal possibilities might be, I would read this as somebody not worried about courts. It would seem like I'm being told pay this, and that's the settlement. What am I missing about how that's worded? I think just simply the language that was, and no specific language was required by Avila, but the court's holding was that the letter either needed to say interest was accruing in some fashion, or clearly state, clearly being in the decision itself, that the acceptance of the payment will be full satisfaction of the debt. You just don't see the language of any kind about full satisfaction. You can infer it, and the defendant in this case felt it necessary to submit an affidavit to supplement the letter explaining what the creditor would do if they received that payment, but the least sophisticated consumer in receipt of this letter wouldn't have the benefit of that affidavit. They wouldn't know that. Thank you. Thank you, Mr. Sanders. Thank you, Your Honor. If you've concluded your argument, we'll hear rebuttal. Thank you, Your Honor. Robert Arlia. What Mr. Sanders said is he's arguing that the offers don't state that will be a full satisfaction component, yet in the decision of the district court, in footnote 1 on page 6, the district court said the court, however, is hesitant to require debt collectors to state explicitly that payment will satisfy a consumer's debt in full, as such requirement would run afoul of Taylor by requiring them to state that there will be no additional payments required. So, the extent that Mr. Sanders bases his entire argument that those settlement offers don't set forth a statement of full satisfaction, that's contradicted by the very decision of the district court recognizing the Taylor decision of this court. So, clearly, there can be no violation here. The offers are clear. A view is fact-specific. There's no harm to the consumer. I would just encourage this court to, I respectfully encourage, to formally recognize and follow the 11th Circuit and Hellman. The Hellman court says that the consumer is charged with reading the letters in full because if you pick only one letter and you make an argument and it's refuted by the prior letters, that's the exact type of bizarre and idiosyncratic interpretation of debt collection letter that the least sophisticated consumer standard is designed to protect against. Just to be clear, Mr. Arleo, you're arguing the district court gave summary judgment. Is that, am I correct in understanding that, in favor of the plaintiff on liability here? Correct. And you're arguing that the district court should have granted summary judgment for you. Correct, or a minimum. Found that it was a fact question. But clearly, summary judgment could be granted on this letter because it complies with all of the mandates of the VILA. It's choice one or choice two. There's clearly case law that says you don't have to extend it to include the fact that interest will accrue if you don't pay by the deadline. There's Second Circuit authority that says, and recognized by the district court, that you're not required to state that payment would satisfy the debt in full as it would run afoul of Taylor. So I think all corners are buttoned up pretty clearly, and I respectfully submit that the decision of district court should be remanded and back to district court to enter summary judgment for the defendant. I think the problem here, Your Honors, is a VILA. It sets up a moving target all over the place. There's so many. Here's a scenario. Watch this. Let's say you put in a VILA advisement in the letter, and it's true that debt is increasing. But some enterprising consumer is going to turn around and say, well, wait a second here. You put that advisement in there. I know for a fact that if I paid that amount, you would accept it at any point, and therefore that is very advisable and false and deceptive and misleading. And the more you force debt collectors to tell stuff in letters and further explain, the FDCPA, I tell my clients, it's a marital statute. Stay as less as possible. Keep it short and sweet. Stay out of trouble. So the more issues that you're more advisements you're trying to make, the more litigation you're going to create. Thank you, Mr. Arleo. We'll take the matter under advisement. And the next case on the calendar is United States v. Peters. Thank you, Your Honor.